[Cite as *Hensley v. Durrani*, 2013-Ohio-4711.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

|  |  |  |
|---|---|---|
| BARBARA HENSLEY, | : | APPEAL NO. C-130005 |
|  |  | TRIAL NO. A-1200508 |
| Plaintiff-Appellant, | : |  |
|  |  | *O P I N I O N.* |
| vs. | : |  |
|  |  |  |
| ABUBAKAR ATIQ DURRANI, M.D., | : |  |
|  |  |  |
| and | : |  |
|  |  |  |
| CENTER FOR ADVANCED SPINE TECHNOLOGIES, INC., | : |  |
|  |  |  |
| Defendants-Appellees. | : |  |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: October 25, 2013

*Eric C. Deters & Partners* and *Eric C. Deters*, for Plaintiff-Appellant,

*Lindhorst & Dreidame Co., L.P.A.*, *Michael F. Lyon* and *Bradley D. McPeek*, for Defendants-Appellees.

Please note:  this case has been removed from the accelerated calendar.

**DEWINE, Judge.**

{¶1} This is an appeal from a summary judgment in a medical-malpractice case involving a spine surgery that allegedly left the patient with severe difficulty swallowing. The trial court found that the patient's claims were barred by the one-year statute of limitations for medical claims. On appeal, the patient argues that under the discovery rule, the limitations period had not yet run when she filed suit. She also argues that summary judgment was improper because she attempted to assert a claim for fraud which is subject to a four-year limitations period. We conclude that the trial court properly found that the lawsuit was filed more than a year after the patient discovered—or should have discovered—her injury, and was thus barred by the statute of limitations. We also conclude that the "fraud claim" was nothing more than a dressed-up claim for medical malpractice, and as a consequence, subject to the same one-year limitations period. Therefore, we affirm the judgment below.

I.

{¶2} After suffering from neck and back pain for several years, plaintiff Barbara Hensley sought treatment from defendant Dr. Abubakar Atiq Durrani in October 2009. As a result of his examination of her, Dr. Durrani recommended a cervical diskectomy and fusion. Dr. Durrani performed the surgery on October 23, 2009. Shortly after the surgery, Ms. Hensley began to have difficulties swallowing. She raised her concerns about trouble swallowing as well as pain between her shoulder blades and down her right arm in a follow up visit with Dr. Durrani two weeks after the surgery. Dr. Durrani assured her that her condition would get better.

{¶3} Despite Dr. Durrani's assurances, her swallowing problems persisted. Throughout the remainder of 2009 and 2010, Ms. Hensley reported her swallowing

difficulty, and accompanying weight loss, in visits to the practice of her family physician, Dr. Gary Shearer. Office notes from the practice reveal ongoing complaints about her swallowing difficulties:

- December 2, 2009: Ms. Hensley's complaints include "trouble swallowing," and Dr. Shearer states that he intends to order a "modified barium swallow," a test intended to ascertain the source of her swallowing problems. Dr. Shearer's notes indicate that she suffers from "dysphagia," or difficulty swallowing.

- December 30, 2009: Ms. Hensley again complains of "trouble swallowing," and Dr. Shearer again assesses her with dysphagia. He notes that she has not yet had the modified barium-swallow test.

- February 24, 2010: Dr. Shearer again assesses her as suffering from dysphagia.

- July 29, 2010: Dr. Shearer again diagnoses her as suffering from dysphagia and orders a barium-swallow study. He further notes that Ms. Hensley had "trouble swallowing meat, does spit stuff up after she swallows since last c-spine surgery 10/09."

- September 27, 2010: In describing her complaints, Dr. Shearer notes "she has been having some dysphagia with solid foods." He also indicates again that he is ordering a barium-swallow test.

- October 27, 2010: Dr. Shearer's partner records that "swallow study shows severe constriction of esophagus—needs GI evaluation." And further notes that "voice getting fainter over past month."

- November 26, 2010: Dr. Shearer records the following as part of his recitation of Ms. Hensley's "Chief Complaint/History of Present

Illness": "She is having some dysphagia. She has had plates and rods removed. It was catching food and pills. She has a lot of scar tissue in her throat. She has lost some weight because she cannot eat meat."

{¶4} Dr. Shearer reviewed these records during his deposition in the case. He stated that he was unable to speculate on the cause of her dysphagia until the barium-swallow test was performed. He acknowledged, however, that the surgery by Dr. Durrani could have been suspected as the source of the problem as early as July 29, 2010, "considering the situation." And based upon the results of the barium-swallow test—which was performed in conjunction with the October 27 visit—Dr. Shearer agreed with defense counsel that the surgery performed by Dr. Durrani "had to be one of the real considerations" as the cause of her swallowing difficulties.

{¶5} As a result of her continuing problems, Ms. Hensley visited Dr. Michael Rohmiller, an orthopedic spine surgeon, on January 24, 2011. Ms. Hensley was accompanied on the visit by her daughter, Sandra Fink. According to Ms. Fink, Dr. Rohmiller told them that Dr. Durrani had not performed the surgery correctly and that he had likely used bone morphogenetic protein ("BMP")—a product that was not FDA approved. He suggested that the use of BMP could be the cause of Ms. Hensley's swallowing problems.

## II.

{¶6} Ms. Hensley filed a lawsuit against Dr. Durrani and his practice, the Center for Advanced Spine Technologies ("CAST"), on January 17, 2012. In her complaint, she alleged medical negligence and battery. After Dr. Durrani answered her complaint, Ms. Hensley filed a motion to amend her complaint to include claims for fraud, lack of informed consent, negligent hiring, and negligent supervision. The trial court did not rule on Ms. Hensley's motion to amend. Dr. Durrani and CAST filed a

motion for summary judgment, arguing that the complaint should be dismissed because it was filed beyond the one-year statute of limitations for medical-malpractice claims. Following a hearing, the trial court granted summary judgment, concluding that the complaint was barred by the statute of limitations.

### III.

{¶7} In her first assignment of error, Ms. Hensley asserts that the trial court erred in granting summary judgment because her lawsuit was filed within one year of when she learned from Dr. Rohmiller that Dr. Durrani had performed unnecessary surgery, had not done the surgery correctly, and had likely used an unapproved substance during the surgery.

{¶8} Ms. Hensley was required to file her medical-malpractice complaint within one year of the "accrual" of her cause of action. R.C. 2305.113(A). Ohio follows the discovery rule, whereby a cause of action for medical malpractice accrues "when the patient discovers, or, in the exercise of reasonable care and diligence should have discovered, the resulting injury." *Oliver v. Kaiser Community Health Found.*, 5 Ohio St.3d 111, 449 N.E.2d 438 (1983), syllabus.

{¶9} Under the discovery rule, the accrual of the cause of action depends upon the existence of a "cognizable event." "A 'cognizable event' is the occurrence of facts and circumstances which lead, or should lead, the patient to believe that the physical condition or injury of which she complains is related to a medical diagnosis, treatment or procedure that she previously received." *Flowers v. Walker*, 63 Ohio St.3d 546, 549, 589 N.E.2d 1284 (1992), citing *Allenius v. Thomas*, 42 Ohio St.3d 131, 538 N.E.2d 93 (1989), syllabus. "Constructive knowledge of facts, rather than actual knowledge of their legal significance" is sufficient under the discovery rule. *Flowers* at

549. The "cognizable event * * * puts the plaintiff on notice to investigate the facts and circumstances relevant to her claim in order to pursue her remedies." *Id.*

{¶10} Ms. Hensley contends that a cognizable event did not occur until Dr. Rohmiller told her that Dr. Durrani had not done the surgery correctly and had apparently used an unapproved substance during the surgery. We are not persuaded. The record before us demonstrates that Ms. Hensley had at least constructive notice months earlier that her swallowing difficulties were related to the surgery done by Dr. Durrani.

{¶11} It is not necessary for purposes of this appeal to pinpoint exactly when the cognizable event occurred. Ms. Hensley filed her lawsuit on January 17, 2012, and, therefore, we must uphold the trial court's grant of summary judgment if a cognizable event occurred before January 17, 2011. Based upon the undisputed facts before us, there is no question that a cognizable event occurred at least by the time of her November 26, 2010 office visit.

{¶12} By her own admission, Ms. Hensley's swallowing problems began shortly after the surgery. During her July 29, 2010 appointment, she specifically noted that she had had swallowing difficulties since her "c-spine surgery." By her November 26, 2010 visit, Ms. Hensley had been complaining of swallowing difficulties to her doctors for over a year. By that time, the assurances that Dr. Durrani had given her after the surgery that the condition would get better had been proven false. The barium-swallow test had confirmed to her treating physician that the surgery was a possible cause of her difficulties. And her own comments at the November 26, 2010 office visit suggest that she drew a connection between her surgeries and her swallowing problem. Under these circumstances, we find that by November 26, 2010, a cognizable event had occurred so as to "put [Ms. Hensley] on notice to investigate the facts and circumstances

relevant to her claim in order to pursue her remedies." *See Flowers*, 63 Ohio St.3d at 549, 589 N.E.2d 1284.

{¶13} The trial court properly determined that the complaint was filed after the expiration of the statute of limitations. The first assignment of error is overruled.

IV.

{¶14} Ms. Hensley's second assignment of error is that the trial court erred by granting summary judgment without ever ruling on her motion to amend the complaint to add a fraud claim. We treat the trial court's failure to rule on a motion to amend as a denial of the motion. *See Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 13. While Civ.R. 15(A) provides that leave to amend should be given freely, a trial court properly refuses to grant leave to amend when amendment would be futile. *Natl. City Bank v. Citizens Natl. Bank of Southwest Ohio*, 2d Dist. Montgomery No. 20323, 2004-Ohio-6060, ¶ 26. Here, amendment would have been futile because the allegations contained within the "fraud claim" are subject to the same one-year statute of limitations as her medical-malpractice claim.

{¶15} Ms. Hensley contends that her fraud claim was independent of her medical-malpractice claim, and that it should have been subject to a four-year statute of limitations. R.C. 2305.09(C). "In determining which limitation period will apply, courts must look to the actual nature or subject matter of the case, rather than to the form in which the action is pleaded." *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984).

{¶16} R.C. 2305.113 provides for a one-year statute of limitations for a "medical claim," which is defined broadly as "any claim that is asserted in any civil action against a physician * * * and that arises out of the medical diagnosis, care, or treatment of any person." R.C. 2305.113(E)(3).

7

{¶17}    Ms. Hensley's proposed amended complaint alleged that Dr. Durrani committed fraud by misrepresenting her need for surgery, by failing to disclose that BMP would be used and also the risks associated with BMP, and by failing to disclose information relating to his competence to practice medicine and professional history.

{¶18}    Notwithstanding the broad definition of medical claim in R.C. 2305.113(E)(3), the Ohio Supreme Court has recognized that in some cases a fraud claim may exist independent of a medical claim.    *See   Gaines v. Preterm-Cleveland, Inc.*, 33 Ohio St.3d 54, 514 N.E.2d 709 (1987), paragraph one of the syllabus.    *Gaines* involved a case where a doctor lied about having removed an intrauterine device during surgery and the lie was not discovered until over three years later by which time the device had perforated the patient's uterus.  *Id.* at 56.  The court held that "a physician's knowing misrepresentation of a material fact concerning a patient's condition, on which the patient justifiably relies to his detriment may give rise to a cause of action in fraud independent from an action in medical malpractice." *Id.*  Importantly, though, the court qualified its holding by explaining that the claims were only independent where "the decision to misstate facts cannot be characterized as medical in nature." *Id.  But see id.* at 63, Moyer, J. dissenting (concluding that because the "gist of plaintiff's allegations constitute an action for medical malpractice," the medical-claim statute of limitations should apply).

{¶19}    Here, Ms. Hensley's allegations go squarely to her diagnosis, care and treatment.  In essence, she alleges that Dr. Durrani committed fraud by recommending unnecessary surgery and by not telling her that the procedure he intended to use was risky and untested, and that his record as a doctor was not unblemished.  Clever pleading cannot transform what are in essence medical claims into claims for fraud.  The allegation about misrepresentations concerning the medical necessity of surgery is

8

simply an attack on Dr. Durrani's "medical diagnosis." R.C. 2305.113(E)(3). And questions about additional disclosures and representations about BMP and Dr. Durrani's past record go to whether Dr. Durrani failed to disclose "material risks and dangers" of the procedure, or in other words, whether he obtained her informed consent. *See White v. Leimbach*, 131 Ohio St.3d 21, 2011-Ohio-6238, 959 N.E.2d 1033, ¶ 46. A claim of lack of informed consent is a medical claim. *Id.*

{¶20} The alleged misrepresentations and omissions in this case can only be "characterized as medical in nature." *Gaines*, 33 Ohio St.3d at 56, 514 N.E.2d 709. Because the fraud claim was not independent of the medical-malpractice claim, it was subject to the same one-year statute of limitations. Amendment to include a fraud claim would have been futile, and summary judgment was properly entered in the action. The second assignment of error is overruled.

{¶21} We affirm the judgment of the trial court.

Judgment affirmed.

**HILDEBRANDT, P.J.,** and **FISCHER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.